LEMON THOMSON, Respondent, *v.* JOSEPH McCALDIN *et al.*, Appellants.

*Supreme Court, Third Department, General Term, December* 11, 1889.

1. *Appeal. Case.*—The case on appeal should present all the findings of the referee, and especially his report, where the questions relate to refusals to find certain facts and conclusions of law as requested.
2. *Contract. Construction.*—An agreement that if the market price of certain lumber fell, the vendee should have the benefit of the fall, is not the same as a contract that, if any other responsible lumber dealer should offer the same kind of lumber for a less price, the vendor would furnish it at that price.
3. *Same. Demand.*—Where, under such a contract, a dispute arises as to the market value, a request that the vendor should furnish the lumber, leaving the price for future arrangement, is not a sufficient demand.
4. *Same. Damages.*—Where, in an action for the price of lumber, the vendee seeks to counterclaim special damages by reason of his inability to complete his contracts with third persons from the neglect of the vendor to furnish lumber as agreed, the mere exhibition of a bundle of contracts to the vendor without informing him of their contents is insufficient to charge him with notice.
5. *Same.*—The fact that the vendee sold some of such lumber to persons other than those mentioned in his contracts, incapacitated him to that extent from performing such contracts, and showed that the contract with the vendor was not made solely with a view to his own existing contracts, but for general purposes of business.
6. *Same.*—Where there is nothing to show that the parties to an executory contract for the sale of personal property contemplated a particular rule for estimating damages, the common rule applicable to executory contracts will apply.

Appeal from judgment in favor of plaintiff entered on report of a referee.

Action for lumber sold and delivered, and for demurrage. Defendant set up a counterclaim, which was overruled.

*J. Stewart Ross*, for appellants.

*Isaac Lawson*, for respondent.

LEARNED, P. J.—The only questions presented on this appeal arise on the counterclaim.

Many of the points urged by the appellant relate to the refusal by the referee to find certain facts and certain conclusions of law as requested. Now there is this serious difficulty in passing on these points, that the appellant has not furnished us with a copy of the referee's report. We are, therefore, unable to know what facts the referee did find. There seem to have been forty-five requests to find, of which twenty-three are not printed. So that we cannot tell whether or not the report and the other findings disposed of the matters contained in these requests. It is possible, at least, that the report or the other findings passed upon the very matters, for the refusal to find which the appellant now asks a reversal. It is not a proper presentation of the case on appeal when the appellate court is not fully informed as to all the findings of the referee, and especially as to his report. We ought to know what facts the referee found before we can justly determine whether a refusal was improper. Further than this, the case does not appear to have been settled by the referee.

The defendant urges that the referee erred in refusing to find the twenty-fifth request. This was a request to find that on the agreement made about April 1, 1886, the plaintiff and his partner agreed with the defendant, that "if any other responsible lumber dealer should offer the same character of boards for a less price than," etc., then plaintiff and his partner would furnish the boards contracted for at the price at which defendants could procure such boards from such other dealers.

Now the evidence on which the defendants insist that the referee should have made this finding is to the effect that, if the boards went lower, the defendants were to have the benefit of the fall in the market. This is a different agree-

ment from that which the referee was requested to find. There may have been some evidence tending to support this request; but much of the evidence on this point is to the effect above stated. And we cannot say that the referee erred in this finding. There is a decided difference between a contract that defendants should have the benefit of any fall in the market price, and a contract that plaintiff should sell his lumber for such a price as the defendant might obtain from some responsible dealer, without limitation as to the quantity for or the circumstances under which such price should be made. And on the question of fact the defendants produced a memorandum book of plaintiff's partner, which contains an entry: " If price go lower McCaldin to have benefit." This would be a safe and definite arrangement. One dependent on the price at which any responsible dealer might offer such boards at would be very unsafe and uncertain.

The next request contains the words " pursuant to said agreement." As the referee had not found the agreement he could not make this finding, which assumed the existence of the agreement.

On the examination of the evidence on which defendant's claim that the referee erred in refusing to find the twenty-eighth and twenty-ninth requests we cannot say that he was in error. We think that the mere exhibition to plaintiff's partner of a bundle of so called contracts, with nothing said to him about the contracts, even taken with the testimony of Mr. Shaw, is not evidence which shows that there was error in this finding. These so-called contracts and some others subsequently made were afterwards given in evidence. If they contain any agreements binding on defendants, such agreements are that defendants are to do certain work on ships " at current rates, not exceeding prices here named." And the prices named, so far as we can see, exceed the price of the contract in dispute.

The thirtieth, thirty-first and thirty-second requests relate

to the alleged demand by defendant for the performance of the contract. The subsequent thirty-fourth request which the referee did find shows the reason of his refusal. He finds that one of the defendants requested plaintiff to commence shipping boards and to leave the matter of the dispute as to price until after Mr. Lord, plaintiff's partner, now deceased, should get well. The defendants insisted that they could purchase these boards at less than the contract price. The plaintiff did not believe that they could do so. They wished him to ship the boards at the less price and he refused. Or they desired him to ship them, leaving the price for future arrangement. This he was unwilling to do.

It appears that in May, 1886, the defendants had received a bill of lumber from the plaintiff's firm with prices charged according to those in the contract. Defendants sent it back with lower prices inserted, and with a memorandum that they were offered all the boards they could use for the above prices. The plaintiff's firm did not accept the proposed reduction.

It may be remarked here that if, as stated by defendants, they were offered all the boards they could use at these lower prices, they could not have suffered any damages by the refusal of plaintiff's firm to sell at the original price, or even at the lower rate. For if plaintiff's firm refused to sell at these lower rates defendants had only to buy elsewhere, " all these boards we can use."

The thirty-eighth is a request to find that, during the canal season, defendants applied to all parties known to be dealing in such boards, but were unable to obtain them.

The memorandum just above referred to is some evidence to the contrary. The testimony on which defendants rely is of applications made in the fall, September and October, and to parties in Albany and Utica, and not elsewhere. It does not appear that they applied to any dealers in New York, where their own business was, and one firm at least is shown to have dealt in this lumber there. One of the dealers to

whom they applied testified that he had an accumulation in the spring and a moderate supply during the season. Another of defendant's witnesses stated that one of the defendants said to plaintiff, in the early part of September, that the defendants were buying boards all the time at lower prices.

In some other requests the referee was asked to find that the defendants were obliged to substitute spruce or pine boards in work on vessels mentioned in the bill of particulars, at a higher price, and that they suffered damage thereby. This he refused to do.

On looking at the so-called contracts, under which defendants claim to have suffered this damage, it will be seen that a certain price is named for pine, another for spruce, another for hemlock ; the last being the lowest. The contract in question was for hemlock culls. Now since the price to be paid to defendants by the ship owners was governed by the kind of lumber furnished, we see no proof that the defendants suffered damage by furnishing pine and spruce instead of hemlock, and getting therefor a higher price.

In regard to the question of damages, we must observe that early in May the plaintiff's firm was informed in writing by defendants that they were offered all the boards they could use for the less price and five and one-half and seven cents instead of six and seven and one-half. Whatever might have been the knowledge of plaintiff's firm as to the use for which the boards were intended, they thus received a notice that the defendants would have no difficulty in obtaining all that they wanted for any purpose.

The appellants state in their brief that in May they demanded to plaintiff to deliver the boards at the reduced prices. But on looking at the words in the testimony which they rely on for this statement, we find that the demands were in September, and there is no evidence pointed out of any demand before that time made on this plaintiff.

We have not referred to any evidence, and have not been able to find any, establishing the fact that the market price

of these hemlock culls was less than the contract price.    One witness states that he sold some to defendants at seven cents, but the size is not specified.

There is some inconsistency in the position taken by defendants.    They say first that responsible dealers were ready to sell them such boards at less rates than plaintiff's contract ; then they say that, on the contrary, they were unable to buy such boards of any one.    Where were the responsible dealers ?

Or, if we use the phrase market price, how could there be a market price when there were no such boards in the market ?

It is true that possibly defendants in reliance on plaintiff's contract might have neglected the opportunity of buying from these responsible dealers until their lumber had been sold, and then might have been unable to obtain any except such as plaintiff had.    But we do not find the proof of this in the case.    Or the defendants might have bought all that could be had of others than plaintiff.    After they had done this, it would not be easy to prove a market price.

The general rule as to damages on an executory contract for the sale of personal property is familiar.    The exception is pointed out in Booth *v.* Spuyten Duyvil R. Mill Co., 60 N. Y. 487.    It seems to us that this case does not come within the exception.    In the first place it is not established that plaintiff and his partner knew that these boards were for a specific purpose.    Defendants were dealers, and sold such boards, and there were no circumstances from which it may be fairly inferred that the parties contemplated a particular rule for estimating the damages.

Next it is defendants' own claim that there was a market price, or a price at which responsible dealers would furnish the article.    The contrary is pointed out in the case last cited.    Again we do not see that any satisfactory proof is given of damages suffered by defendants.    They furnished more expensive boards, it is true, but it does not appear that they were not paid the full value.    The so-called contracts provided for the payment of different prices according to the

kinds of lumber furnished. And, with two exceptions, they are not signed by defendants. Whether counterparts were signed by them does not appear. If the defendants in fact were, under these so-called contracts, paid for the pine and spruce lumber only the price of hemlock, that fact should have been proved.

Furthermore it appears that defendants sold hemlock culls between April and December to persons other than the owner or captains of the vessels mentioned in the so-called contracts. So far as they did this they deprived themselves of the means of performing the so-called contracts. And this fact further shows that the agreement with plaintiff and his partner was not made solely with a view to these so-called contracts, but for general purposes of business.

We should further notice that the testimony of the plaintiff himself, which the referee might have accepted as the correct story, shows that after sending the first load of lumber and receiving the statement on the bill, which has been above referred to, the plaintiff and his partner procured another boat for the purpose of shipping more boards to defendants and telegraphed them of this; and that defendants did not answer. This testimony, to which we only refer briefly, might have satisfied the referee that the defendants did not desire any more of the lumber. For by the agreement, as proved by defendants, plaintiff and his partner were to " ship loads as ordered." And the testimony of plaintiff, if correct, would show that there was no order until the conversation in September.

From an examination of the evidence presented on the appeal we think the judgment should be affirmed, with costs.

LANDON and PUTMAN, JJ., concur.

NOTE ON "RULE OF DAMAGES ON SALES FOR PARTICULAR PURPOSE."

Where the parties to a contract contemplate a particular rule for estimating damages, and enter into a contract on that basis, such rule will be adopted. E. T. Co. *v.* E. B. Co., 16 Daly, 212.

The loss of profits, reasonably well established by the evidence, may be allowed as part of the damages. Hine *v.* Cushing, 53 Hun, 519.

In an action on a warranty of varnish for a special purpose, the proper measure of damages is the difference in the value of the object on which it was used, if the varnish had been as warranted, and its actual value. Moore *v.* King, 57 Hun, 224.

In an action for a breach of warranty of a lintel, the purchaser is entitled to recover damages caused by its fall. Riss *v.* Messmore, 58 N. Y. Supr. 23.

A verdict for damages resulting from the sale of unwholesome coloring matter to a confectioner may include an allowance for the loss of business consequent upon its use in addition to the value of the material spoiled. Swain *v.* Schieffelin, 58 Hun, 608. The rule of damages in an action for the breach of a warranty as to the quality of material used in the manufacture of goods is the difference between the market value of the manufactured article as it would have been had the material been equal to the warranty, and its actual value. Wait *v.* Borne, 123 N. Y. 592. Where the vendee has actually sold the manufactured article for a sum equal to, or exceeding, its actual value, under circumstances which leave no liability on his part, his recovery should be limited to the basis furnished by the price so received. Id.

In an action for damages for breach of an express warranty to construct a freezer which would preserve poultry in perfect condition, the measure of damages is the difference between the value of the refrigerator as constructed and its value as it would have been if made according to contract. Beeman *v.* Banta, 118 N. Y. 539. Where the defendant knows that the plaintiff expects to put it to immediate use, he is entitled to recover also the value of the poultry, which became spoiled through its failure to meet the requirements of the warranty. Id.

Where there is a special warranty and a breach, the plaintiff is entitled to such damages as are the natural and necessary consequences of the breach. Passenger *v.* Thorburn, 34 N. Y. 634. Where the defendant sold cabbage seed, and warranted the same to produce Bristol cabbages, which warranty was untrue, the damages are the value of a crop of Bristol cabbages, such as would ordinarily have been produced that year, after deducting the expense of raising the crop and also the value of the crop actually raised therefrom. Id.; White *v.* Miller, 71 N. Y. 118.